UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND *et al.*,

Petitioners,

-v-

REGAL USA CONCRETE INC.,

Respondent.

22 Civ. 8202 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

Petitioners Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; Trustees of the New York City Carpenters Relief and Charity Fund; the Carpenter Contractor Alliance of Metropolitan New York; and the New York City District Council of Carpenters have petitioned to confirm an arbitration award issued against Respondent Regal USA Concrete Inc. Dkt. 17 (the "Amended Petition"). Petitioners also seek to recover attorneys' fees and costs that they have incurred in bringing this Amended Petition to confirm that award. The Amended Petition is unopposed, as Respondent did not appear at the underlying arbitration hearing, has not opposed confirmation of the arbitration award, and has not even appeared before this Court. For the reasons below, the Amended Petition is granted, but with a reduction in Petitioners' request for attorneys' fees.

# I. Background

## A. Facts

Petitioners bring this action under section 301 of the Labor Management Relations Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185, to confirm and enforce an arbitrator's award (the "Award") rendered under a collective bargaining agreement (the "CBA") involving Petitioner the New York City District Council of Carpenters (the "Union") and Respondent Regal USA Concrete Inc. ("Regal"). Amended Petition ¶ 1. Petitioner Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated under the Employee Retirement Income Security Act of 1974. *Id.* ¶ 4. Petitioner Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). Amended Petition ¶ 5. Petitioner Carpenter Contractor Alliance of Metropolitan New York (collectively with the ERISA Funds and the Charity Fund, the "Funds") is a not-for-profit corporation. *Id.* ¶ 6. The Union is a labor organization and the certified bargaining representative for certain employees of Regal. *Id.* ¶ 7.

Regal became a member of the "Cement League" as of at least May 18, 2015. *Id.* ¶ 9, Exh. A. By virtue of that membership, Regal agreed to be bound by the CBA, which the Cement League had entered into on behalf of its members with the Union for the period of July 1, 2015 through June 30, 2019. *Id.* ¶ 10, Exh. B ("CBA"). The Union and the Cement League entered into supplemental agreements which extended the CBA through June 30, 2023. *Id.* ¶ 11, Exh. C.

The CBA requires Regal to send contributions to the Funds for all work performed by its employees within the trade and geographical jurisdiction of the Union. *See* CBA Art. XVI § 1; Amended Petition ¶ 13. For a period of time, Regal did in fact send such contributions to the Funds. Amended Petition ¶ 14, Exh. D. The CBA also requires Regal to make its books and payroll records available for an audit upon the Funds' request so that the Funds can ensure that Regal is making the necessary benefit fund contributions under the CBA. *See* CBA Art. XVI § 1; Amended Petition ¶ 17.

Besides those requirements, the CBA mandates Regal's compliance with the terms and conditions of the various agreements and declarations of trust creating the Funds, and with by-laws adopted to regulate each Fund. CBA Art. XVI § 3. Those agreements then provide the trustees of each Fund with, among other powers and duties, the power to promulgate rules and regulations necessary to the effectuation of the purposes of the agreements and declarations of trust. Amended Petition, Exh. E Art. VII § 1(29); *id.*, Exh. F Art. VII § 1(29); *id.*, Exh. G Art. VII § 1(30); *id.*, Exh. H. Art. VII § 1(31).

The Funds promulgated a Revised Statement of Policy for Collection of Employer Contributions in January 2016. Amended Petition ¶ 16, Exh. J ("2016 Collection Policy"). Under the 2016 Collection Policy,

> The Outside Accounting Firms engaged by the Funds shall periodically review and/or audit the books and records of all the employers bound by or signatory to a collective bargaining agreement with the District Council or any other agreements under which they are obligated to contribute to the Funds. The purposes of the employer payroll review and audits are to determine whether or not the employer has complied with its obligation to pay timely contributions to the Funds and to encourage timely and accurate payment of contributions owed to the Funds.

2016 Collection Policy § IV(1). Thus, the 2016 Collection Policy, like the CBA itself, required an employer like Regal to make available its books and records to allow the Funds to conduct an

audit to ensure compliance with the employer's required contributions to the Funds. *See* Amended Petition ¶ 17.

Pursuant to the 2016 Collection Policy, on October 29, 2021, Petitioners conducted an audit of Regal's files for the period of July 1, 2020 through December 31, 2020 to determine whether Regal had paid the proper contributions for that period. *Id.* ¶ 21; *see* Dkt. 13, 13-2.[1] The audit revealed a principal deficiency of $2,543.64. Amended Petition ¶ 21. A dispute arose after Regal refused to pay that amount. *Id.* ¶ 22.

The Funds promulgated another Revised Statement of Policy for Collection of Employer Contributions on March 2, 2022. Amended Petition ¶ 16; *see id.*, Exh. I ("2022 Collection Policy"). The 2022 Collection Policy was "effective immediately upon adoption and applies to all matters pending at that time or initiated thereafter to the full extent permitted by law." 2022 Collection Policy § IX(1).

The 2022 Collection Policy, the CBA, and the various agreements governing the Funds provide for the resolution of disputes via arbitration. *Id.* § VI(1) ("Except as otherwise provided in this Policy, legal action to collect delinquencies shall generally be in the form of arbitration."); CBA Art. XVI § 7 ("Should any dispute or disagreement arise between the parties hereto, or between the Union and any Employer-member signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder . . . ."); *see also* Amended Petition, Exh. E Art. V § 2(c), as amended by the Eighth Amendment to the Amended

[1] The audit report provided by Petitioners at Docket Number 13-2 refers to an audit conducted for the period from June 24, 2020 to June 29, 2021. Dkt. 13-2 at 2. The Court understands the Amended Petition to seek damages only for the deficiencies found in the period from July 1, 2020 to December 31, 2020, which of course is a period included within the longer total audited period. *See* Amended Petition ¶ 21.

Agreement and Declaration of Trust, Amended Petition, Exh. E at 53-54 ("The Trustees shall have the sole discretion to elect to enforce their right to an Employer's Contribution and Audit Obligation through litigation in state or federal court, arbitration, participations in insolvency proceedings, or any other appropriate proceeding."). The CBA and the 2022 Collection Policy also provide that, should the Funds have to arbitrate a dispute or sue for unpaid contributions, the Funds have a right to collect: (1) the delinquent contributions; (2) interest on the unpaid contributions at the prime rate of Citibank plus 2%; (3) liquidated damages in the amount of 20% of the unpaid contributions or interest on the unpaid contributions, whichever is greater; (4) reasonable costs and attorneys' fees incurred by the Funds in collecting the delinquencies; and (5) other legal or equitable relief that the Court deems appropriate. CBA Art. XVI § 6; 2022 Collection Policy § V; Amended Petition ¶ 20.

Pursuant to the CBA and 2022 Collection Policy, Petitioners initiated arbitration before Arbitrator Steven C. Kasarda. Amended Petition ¶ 23. Arbitrator Kasarda held a hearing on May 19, 2022. Amended Petition ¶ 24; *id.*, Exh. L ("Award"). Regal was notified of the proceeding and the claims against it. *See* Amended Petition, Exh. K; Award at 1. But Regal did not appear or request an adjournment or extension of time. *See* Award at 1-2. Arbitrator Kasarda examined the evidence and issued a written award on May 24, 2022. Amended Petition ¶ 24; Award at 1-3.

Arbitrator Kasarda found that the CBA obligated Regal to make contributions to the Funds and to allow audits of its books and records to verify these contributions. Award at 2. He further found that Regal was delinquent in remitting contributions to the Funds in violation of the CBA. Award at 2. Arbitrator Kasarda ordered Regal to pay the Funds $9,324.71, consisting of (1) the principal deficiency of $2,543.64; (2) interest of $187.73; (3) liquidated damages of $508.73; (4)

audit costs of $2,965.90;[2] (5) promotional fund contributions of $30.70; (6) late payment interest of $188.01; (7) attorneys' fees of $1,500; (8) arbitrator's fees of $1,000; and (9) court costs of $400. *Id.* at 2-3; Amended Petition ¶ 25. A copy of the Award was delivered to Regal. Amended Petition ¶ 24; *see id.*, Exh. L. As of the Amended Petition's filing date, Regal has failed to abide by the Award. Amended Petition ¶ 26.

**B. Procedural Background**

On September 26, 2022, Petitioners filed a petition to confirm the Award and for their attorneys' fees and costs in seeking confirmation of the award, Dkt. 1, and an accompanying memorandum of law in support of the Petition, Dkt. 5. Petitioners served Regal with the Petition by personal service to the New York Secretary of State on September 27, 2022. Dkt. 7. On November 16, 2022, the Court ordered Regal to file any opposition by December 6, 2022. Dkt. 9. That order was served on Regal on November 17, 2022. Dkt. 11. Also on November 16, 2022,

---

[2] The 2016 Collection Policy and 2022 Collection Policy differ with respect to the standard to trigger responsibility of an employer such as Regal to pay for the cost of an audit. *See* 2016 Collection Policy § IV(8) ("The employer shall be required to pay the cost of a payroll review and/or audit if the payroll review and/or audit discloses an underpayment of contributions to the Funds totaling at least two (2) percent of the employer's total payroll for covered employees for the payroll review and/or audit period at issues, or an underpayment of contributions totaling at least $10,000, whichever is less. However, whenever the collection of underpayments found in a payroll review and/or audit proceeds to arbitration or litigation, the employer shall pay all payroll review and/or audit costs without regard to the previous sentence."); 2022 Collection Policy § IV(8) ("The employer shall be required to pay the cost of a payroll review and/or audit if (1) the payroll review and/or audit discloses an underpayment of contributions to the Funds totaling $50,000 or more, or (2) the payroll review and/or audit discloses an underpayment of contributions to the Funds totaling $10,000 or more and said underpayment represents at least 2% of the employer's total remittances for work performed during the audit period. Notwithstanding the foregoing, whenever the collection of underpayments found in a payroll review and/or audit proceeds to arbitration or litigation, the employer shall pay all payroll review and/or audit costs."). The Award is not clear as to whether Arbitrator Kasarda assessed the audit costs and other fees under the 2016 or 2022 Collection Policy, but since the policies both require Regal to pay these costs and fees when collection proceeds to arbitration or litigation, the Court need not examine this issue further.

Petitioners requested that the Court consider its petition as an unopposed motion for summary judgment, in accordance with *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Dkt. 10. After the Court requested additional information from Petitioners, Dkts. 12, 14, Petitioners sought leave to file an amended petition, Dkt. 15. The Court granted this request, ordered Petitioners to file and serve an Amended Petition by June 30, 2023, and ordered Regal to respond by July 21, 2023 or else the Amended Petition would be deemed unopposed as Regal had yet to appear in this action. Dkt. 16. Petitioners filed the Amended Petition on June 29, 2023. Dkt. 17. They served the Amended Petition on Regal on June 29, 2023, Dkts. 20-21, and again on July 6, 2023, Dkt. 22. Regal has neither submitted an opposition nor otherwise appeared in this action.

## II. Discussion

### A. The Arbitration Award

#### 1. Applicable Law

"The LMRA establishes a federal policy of promoting industrial stabilization through the collective bargaining agreement, with particular emphasis on private arbitration of grievances." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (internal quotation marks omitted). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," and "[o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted).

As a result, judicial review of an arbitration award is "limited to determining whether the arbitration proceedings and award met the minimum legal standards established by" the LMRA. *Nat'l Football League Mgmt. Council*, 820 F.3d at 532. The Court "must simply ensure that the

arbitrator was even arguably construing or applying the contract and acting within the scope of his authority and did not ignore the plain language of the contract." *Id.* (internal quotation marks omitted). Under this standard, "even if an arbitrator makes mistakes of fact or law, [a district court] may not disturb an award so long as [the arbitrator] acted within the bounds of his bargained-for authority." *Id.* In other words, "[a]s long as the award draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice, it must be confirmed." *Id.* at 537 (internal quotation marks omitted).

If, as here, a petition to confirm an arbitration award is unopposed, courts generally treat the petition "as akin to a motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 109. Although the Court grants significant deference to the arbitrator's decision, an unopposed confirmation petition must "fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

**2. Analysis**

Petitioners have adequately shown that there is no genuine issue of material fact precluding judgment in their favor confirming the Award. Arbitrator Kasarda found that Regal was bound by the CBA, which requires it to remit timely fringe benefit contributions to the Funds. Award at 2; *see* CBA Art. XVI § 1. The CBA also provides for arbitration if a dispute occurs. CBA Art. XVI § 7. Arbitrator Kasarda observed that Regal had "legally sufficient notice" of the arbitration proceeding yet failed to attend. Award at 1-2. Accordingly, Arbitrator Kasarda "found the Respondent to be in default and proceeded to hear the testimony and take evidence on the claims" submitted by Petitioners, *id.*, and concluded "based on substantial and credible evidence" that Regal was liable for $9,324.71, *id.* at 3; Amended Petition ¶ 25. These findings adhered to the terms of the CBA and were well within the bounds of Arbitrator Kasarda's authority.

The Court also finds, based on the undisputed evidence, that the Award is proper. As noted above, the CBA and the 2022 Collection Policy provide that, should the Funds have to arbitrate a dispute or sue over unpaid contributions, the Funds may collect, along with the delinquent contributions: (1) interest on the unpaid contributions at the prime rate of Citibank plus 2%; (2) liquidated damages for 20% of the unpaid contributions or interest on the unpaid contributions, whichever is greater; and (3) reasonable attorneys' fees and costs incurred by the Funds in collecting the delinquencies. CBA Art. XVI § 6; 2022 Collection Policy § V; *see* Amended Petition ¶ 20. In deciding the Award, Arbitrator Kasarda received in evidence a summary report of the audit of Regal's estimated deficiencies, as well as testimony from the auditors. *See* Award at 2. "Although Petitioners have not presented this Court with copies of all the materials on which the arbitrator relied, there is no reason to doubt the arbitrator's interpretation of those materials." *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. CEI Contractors Inc.*, No. 21 Civ. 7870 (JPC), 2022 WL 3225680, at *3 (S.D.N.Y. Aug. 10, 2022) (internal quotation marks omitted). Moreover, "nothing suggests that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law." *Id.* (internal quotation marks omitted). The Court therefore confirms Petitioners' timely application for confirmation of the Award.

**B. Petitioners' Application for Attorneys' Fees, Costs, and Post-Judgment Interest**

**1. Applicable Law**

Petitioners request $2,714.50 in attorneys' fees and $230.94 in costs arising out of their efforts in bringing this action to confirm the Award. Amended Petition ¶¶ 29-38; Dkt. 18 at 4-7. Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award," which section 301 of the LMRA does not provide. *Int'l Chem. Workers Union, Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir.

1985) (citations omitted). But a court may award attorneys' fees "[p]ursuant to its inherent equitable powers . . . when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (internal quotation marks omitted). "[W]hen a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Id.* (internal quotation marks omitted).

In determining whether a requested fee is reasonable, courts look to the total hours billed and the rates at which those hours were billed. "A reasonable hourly rate is what a reasonable, paying client would be willing to pay." *N.Y.C. & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16 Civ. 1115 (GHW), 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (internal quotation marks omitted). An attorney's hourly rate is considered reasonable when it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

To allow the Court to determine whether time was reasonably expended, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). These applications should exclude "[h]ours that are excessive, redundant, or otherwise unnecessary." *Id.* (internal quotation marks omitted).

**2. Analysis**

Regal has failed to appear or defend this action and has not justified its failure to abide by Arbitrator Kasarda's decision. *See N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel Const. Grp., LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *3 (S.D.N.Y. Feb. 3, 2009) ("Here, Defendant has failed to appear or in any way defend this confirmation action, and thus it is axiomatic that Defendant has offered no justification for its failure to abide by the Award."). And the CBA provides that if the Funds initiate judicial proceedings to collect delinquent contributions,

and prevail in that litigation, the employer shall pay reasonable attorneys' fees and costs. *See* CBA Art. XVI § 6(a)(4); Amended Petition ¶ 29. The 2022 Collection Policy similarly provides that attorneys' fees shall be assessed against a delinquent employer to cover time spent by counsel "in collection efforts or in enforcing the Board of Trustees' rights to payroll reviews and/or audits." Collection Policy § V(6); Amended Petition ¶ 30. Thus, the Court holds that an award of fees and costs is proper in this case.

In support of their application for attorneys' fees, Petitioners have submitted an invoice from their law firm, Virginia & Ambinder, LLP, reflecting .4 hours of partner time billed at $410 per hour, 6.6 hours of associate time billed at $275 or $310 per hour, and 4.7 hours of legal assistant time billed at $120 or $155 per hour.[3] Amended Petition, Exh. M ("Billing History"); *see id.* ¶¶ 31-38. After reviewing Petitioners' counsel's time records, the Court first finds these 11.7 hours spent on this case to be reasonable and not duplicative, and notes that associates or legal assistants conducted the vast majority of the work in this case, which reduced fees.

The Court next turns to the requested hourly rates. The .4 hours of partner time is attributed to Adrianna Grancio, a 2016 graduate of St. John's University School of Law. *Id.* ¶ 33. When Ms. Grancio was an associate, courts in this District usually set her rate at $225 to $250 per hour. *See Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Land Cruising Props. Inc.*, No. 21 Civ. 7877 (KPF), 2022 WL 1125623, at *7 (S.D.N.Y. Apr. 15, 2022) (awarding Ms. Grancio fees at a rate of $250 per hour); *CEI Contractors*, 2022 WL 3225680, at *5 (same). However, Ms.

---

[3] Petitioners' counsel's rates changed on January 1, 2023. Amended Petition ¶¶ 32, 35. For work performed prior to January 1, 2023, Petitioners seek $275 per hour for associates Maura Moosnick and Matthew Vani and $120 per hour for the legal assistants. *See* Billing History at 1-3. For work performed since January 1, 2023, Petitioners seek $310 per hour for Ms. Moosnick and $155 per hour for the legal assistants. *Id.* at 3-4. Mr. Vani did not work on this case in 2023, and the partner, Adrianna Grancio, only worked on this case in 2023. *Id.*

Grancio appears to have been made partner subsequent to these cases, and so the Court grants Ms. Grancio's rate of $410 per hour, which the Court finds in line with the rates in this area of a partner of Ms. Grancio's skill and experience. *Cf. Finkel v. Millennium Fire Servs., LLC*, No. 23 Civ. 4397 (FB) (RML), 2023 WL 4665798, at *2 (E.D.N.Y. July 20, 2023) (granting Ms. Grancio $375 per hour after her promotion to partner).

The 6.6 hours of associate attorney time is attributed to Maura Moosnick, a 2021 graduate of Fordham University School of Law, and Matthew Vani, a 2022 graduate of St. John's University School of Law. Amended Petition ¶¶ 32, 34. As an associate, Ms. Moosnick has represented clients in similar matters before. *See Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Kaja Custom Builders LLC*, No. 22 Civ. 171 (VM), 2022 WL 987667, at *2 (S.D.N.Y. Mar. 31, 2022) (awarding Ms. Moosnick fees at a rate of $275 per hour); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Reliable Build, Inc.*, No. 21 Civ. 9332 (VM), 2022 WL 214389, at *2 (S.D.N.Y. Jan. 25, 2022) (same). Mr. Vani has as well. *See Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. 809 Solutions LLC*, No. 22 Civ. 10632 (LJL), 2023 WL 2787454, at *5 (S.D.N.Y. Apr. 5, 2023) (awarding Mr. Vani fees at a rate of $225 per hour). However, several courts have awarded lower fees for Virginia & Ambinder attorneys with more or similar experience, including Ms. Grancio when she was an associate, typically between the range of $225 and $250 per hour. *See, e.g.*, *Land Cruising Props.*, 2022 WL 1125623, at *7 (awarding Ms. Grancio fees at a rate of $250 per hour); *CEI Contractors*, 2022 WL 3225680, at *5 (same); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. William Somerville, Inc.*, No. 20 Civ. 8983 (PAE), 2021 WL 6065761, at *5 (S.D.N.Y. Dec. 22, 2021) (finding that "$225 represents the upper bound of prevailing rates in this District for associates similarly situated to" Marlie P. Blaise, then an associate at Virginia & Ambinder, who at the time had "2-3 years of experience");

*Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Eclipse Constr. Servs. Inc.*, No. 21 Civ. 7868 (GHW), 2021 WL 5567752, at *6 (S.D.N.Y. Nov. 26, 2021) (explaining that "$225 per hour for associates with similar experience [to Ms. Grancio] is a more appropriate rate"); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Earth Constr. Corp.*, No. 21 Civ. 1443 (JPC), 2021 WL 4975690, at *4 (S.D.N.Y. Oct. 25, 2021) (awarding Ms. Blaise fees at a rate of $225 per hour); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Piccini MNM, Inc.*, No. 19 Civ. 5258 (RA), 2021 WL 1791591, at *4 (S.D.N.Y. May 5, 2021) (awarding Ms. Grancio fees at a rate of $225 per hour). This Court also awarded Ms. Moosnick $225 per hour in August 2022 for work conducted in June 2022, only a few months before much of the work conducted in this case. *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Genrus Corp.*, No. 22 Civ. 4886 (JPC), 2022 WL 3536134, at *5 (S.D.N.Y. Aug. 18, 2022); *see* Billing History. In keeping with that determination, the Court reduces Ms. Moosnick's rate for work on this case prior to January 1, 2023, as well as Mr. Vani's rate for the duration of his work on this case, to $225 per hour . To account for Ms. Moosnick's increased experience and inflation over time, and to reflect the fact that other courts have approved Ms. Moosnick's new higher rate, the Court will award $275 for time billed by Ms. Moosnick subsequent to January 1, 2023. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Prime Contractors, Inc.*, No. 23 Civ. 872 (PAE), 2023 WL 2823020, at *4 (S.D.N.Y. Apr. 7, 2023).

Finally, the 4.7 hours of legal assistant time was billed by three paralegals. Amended Petition ¶ 35 n.1. This Court has previously granted one of those paralegals $120 per hour as a reasonable fee for similar work. *See Genrus Corp.*, 2022 WL 3536134, at *5. And at least one other court has found the increased rates for legal assistants of $155 to be reasonable. *Prime*

*Contractors*, 2023 WL 2823020, at *4. The Court grants the requested legal assistant rates, both the $120 per hour for work prior to January 1, 2023 and the $155 per hours since that date.

Accordingly, Petitioners' request for attorneys' fees is granted, but at the reduced rates discussed above. Petitioners are therefore entitled to $2,432.50 in attorneys' fees. The Court also grants Petitioners $228.94 in costs, which covers the cost of service and postage in this action. *See* Billing History; Amended Petition ¶ 38. Courts have regularly awarded approximately $75 in costs in similar actions, *see CEI Contractors*, 2022 WL 3225680, at *5, and the Court required additional service in this action, which apparently required two attempts because of a change in Regal's address. Dkts. 20, 22. Lastly, the Court awards post-judgment interest "from the date of the entry of the judgment." 28 U.S.C. § 1961(a).

## III. Conclusion

For the reasons above, the Amended Petition is granted. The Clerk of the Court is respectfully directed to enter judgment of $11,986.15, which consists of the arbitration award of $9,324.71, attorneys' fees of $2,432.50, and costs in the amount of $228.94. Post-judgment interest will accrue at the statutory rate. The Clerk of the Court is also respectfully directed to close this case.

SO ORDERED.

Dated: August 9, 2023
New York, New York

JOHN P. CRONAN
United States District Judge